# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**PUBLIC RISK MANAGEMENT OF FLORIDA,**

    **Plaintiff,**

**v.**                                                 **Case No: 6:13-cv-1067-Orl-31TBS**

**ONE BEACON INSURANCE CO.,**

    **Defendant.**

## ORDER

This matter is before the Court, without oral argument, on Defendant OneBeacon Insurance Co.'s ("OneBeacon") Motion to Dismiss or, In the Alternative, Motion for Summary Judgment ("Motion") (Doc. 13), Plaintiff Public Risk Management of Florida's ("PRM") Response in Opposition to the Motion ("Response") (Doc. 20), and OneBeacon's Reply in Support of the Motion (Doc. 26).

### I. Background

This insurance coverage dispute arises out of underlying litigation between the City of Winter Garden, Florida ("Winter Garden"), and Dewitt Excavating, Inc. ("Dewitt") (the underlying lawsuit is the "Dewitt Action"). Simply put, PRM issued insurance coverage to Winter Garden and OneBeacon issued reinsurance for PRM's coverage of Winter Garden—PRM believes the Dewitt Action fell within its duty to defend Winter Garden, OneBeacon does not. The dispute before this Court is whether OneBeacon must reimburse PRM for funds expended defending Winter Garden in the Dewitt Action.

This basis of the dispute began when Winter Garden contracted Dewitt to relocate utilities within the right of way along Florida State Road 50 (the contract is the "Construction Contract," the project is the "FDOT Project"). The FDOT Project was supposed to begin January 4, 2010 and conclude by late 2010. The Construction Contract recorded Winter Garden's agreement to exchange certain amounts of money for Dewitt completing FDOT Project within the established timeframe. The Construction Contract was, however, subject to modifications for increased time and expense. Dewitt encountered various increased expenses beyond its control, such as delays not attributable to Dewitt and incorrect information about the scope of the work involved. At the completion of the FDOT Project, Winter Garden withheld additional money that Dewitt claimed was due under the terms of the Construction Contract. Thereafter, Dewitt filed the Dewitt Action asserting two counts, one for breach of contract and one for violation of Florida's Sunshine Statutes.

During the relevant timeframe PRM insured against Winter Garden's public officials' errors and omissions ("PRM Policy"). The relevant portion of the PRM Policy covers sums "for which the MEMBER [(i.e. Winter Garden)] is legally liable by reason of a WRONGFUL ACT." (Doc. 2-2 at 68). PRM secured reinsurance from OneBeacon that covered losses due to Winter Garden's public officials' errors and omissions covered under the PRM Policy (OneBeacon's policy is the "OneBeacon Treaty"). In other words, where PRM became obligated to pay for Winter Garden because of the PRM Policy, PRM could submit a claim for reimbursement from OneBeacon pursuant to the OneBeacon Treaty.

The Dewitt Action proceeded through litigation with PRM funding Winter Garden's defense. The Dewitt Action ultimately settled before trial with Winter Garden agreeing to pay

Dewitt an additional $1.35 million based on the FDOT Project.[1] PRM claims that because it was obligated to defend Winter Garden, then OneBeacon must reimburse PRM for the $286,941.07 in defense costs in excess of the OneBeacon Treaty's $200,000 retention.

There are two questions presented to this Court: (1) whether the Dewitt Action set forth claims that could fairly be seen as falling within the PRM Policy thus invoking PRM's duty to defend Winter Garden and (2) whether the allegations in the Complaint can set forth a claim for equitable estoppel under Florida law.

## II. Standard

### a. Motion to Dismiss

In ruling on a motion to dismiss, the Court must view the complaint in the light most favorable to the Plaintiff, *see, e.g.*, *Jackson v. Okaloosa County, Fla.*, 21 F.3d 1531, 1534 (11th Cir. 1994), and must limit its consideration to the pleadings and any exhibits attached thereto. Fed. R. Civ. P. 10(c); *see also GSW, Inc. v. Long County, Ga.*, 999 F.2d 1508, 1510 (11th Cir. 1993). The Court will liberally construe the complaint's allegations in the Plaintiff's favor. *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969). However, "conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal." *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003).

In reviewing a complaint on a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "courts must be mindful that the Federal Rules require only that the complaint contain 'a short and plain statement of the claim showing that the pleader is entitled to relief.' " *U.S. v. Baxter Intern., Inc.*, 345 F.3d 866, 880 (11th Cir. 2003) (citing Fed. R. Civ. P. 8(a)). This is a

---

[1] Winter Garden did not seek coverage from PRM for the cost of the settlement. (Doc. 2-5 at 1). Thus, there is no issue in this case, or below, about whether PRM was obligated to indemnify Winter Garden.

liberal pleading requirement, one that does not require a plaintiff to plead with particularity every element of a cause of action. *Roe v. Aware Woman Ctr.for Choice, Inc.*, 253 F.3d 678, 683 (11th Cir. 2001). However, a plaintiff's obligation to provide the grounds for his or her entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 554-555 (2007). The complaint's factual allegations "must be enough to raise a right to relief above the speculative level," *Id.* at 555, and cross "the line from conceivable to plausible." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1950-1951 (2009).

OneBeacon attached the complaint in the Dewitt Action ("Dewitt Complaint") to its Motion, which may be considered by this Court under the standard for a motion to dismiss. *See Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005) ("[The Eleventh Circuit] held that [a district court] may consider a document attached to a motion to dismiss without converting the motion into one for summary judgment if the attached document is (1) central to the plaintiff's claim and (2) undisputed. In this context, "undisputed" means that the authenticity of the document is not challenged."). Insurance coverage under the respective policies rises or falls on the allegations in the Dewitt Complaint, further, PRM has not disputed the authenticity of the Dewitt Complaint. Therefore, the Dewitt Complaint is properly before this Court on Defendant's Motion without the need to apply the summary judgment standard.

### III. Analysis

#### a. Breach of Contract

Under Florida law, if the terms of the two insurance contracts are not ambiguous, the Court may determine whether OneBeacon is obligated to reimburse PRM for the cost to defend the Dewitt Action. *See Lampliter Dinner Theater, Inc. v. Liberty Mut. Ins. Co.*, 792 F.2d 1036, 1040 (11th Cir. 1986) (affirming dismissal where district court held that party did not breach terms of unambiguous insurance policy); *State Farm Fire & Cas. Co. v. Steinberg*, 393 F.3d 1226, 1230 (11th Cir. 2004) ("Florida courts start with the plain language of the policy, as bargained for by the parties. If that language is unambiguous, it governs." (citations and internal quotations omitted)).

Further, the question of whether PRM had a duty to defend Winter Garden turns on whether the factual allegations in the Dewitt Complaint fairly bring it within the PRM Policy. *See U.S. Fire Ins. Co. v. Mikes*, 576 F. Supp. 2d 1303, 1325 (M.D. Fla. 2007) aff'd sub nom. *U.S. Fire Ins. Co. v. Freedom Vill. of Sun City Ctr., Ltd.*, 279 F. App'x 879 (11th Cir. 2008) (under Florida law, "an insurer has to defend its insured whenever it ascertains facts from the complaint that show potential liability within the policy's coverage"). "If the allegations of the complaint leave any doubt as to the duty to defend, the question must be resolved in favor of the insured." *Id.* However, whether PRM had a duty to defend is determined by the Dewitt Complaint taken as a whole—the determination cannot be based on individual paragraphs from the Dewitt Complaint analyzed in a vacuum. *See W. World Ins. Co., Inc. v. Cigna Corp.*, 718 F. Supp. 1518, 1521-22 (S.D. Fla. 1989) (evaluating complaint as a whole and determining that, despite individual allegations that indicated covered actions, the whole document showed the alleged breach was intentional, thus not covered under the policy).

The parties appear to be in agreement that if PRM had no duty to defend under the PRM Policy, then OneBeacon had no duty to reimburse PRM under the OneBeacon Treaty.[2] Accordingly, whether PRM's first count is tenable may be determined on the terms of the PRM Policy and the allegations in the Dewitt Complaint.

### i. The PRM Policy

PRM agreed to insure Winter Garden from damages due to wrongful acts by Winter Garden's public officials. Specifically, the PRM Policy states: "[PRM] agrees, subject to the Coverage Document limitations, exclusions, terms and conditions to pay on behalf of the MEMBER for all sums which the MEMBER is **legally liable by reason of a WRONGFUL ACT.**" (Doc. 2-2 at 68 (emphasis in bold added)). Wrongful acts were defined in the PRM Policy as: "Wrongful Act means any actual or alleged error or miss-statement, omission, act or neglect or breach of duty due to misfeasance, malfeasance, and nonfeasance . . . ." (*Id.* at 15). Additionally, the PRM Policy excluded intentional breaches of contract. (*Id.* at 70).

### ii. The Dewitt Complaint

In this case, the Complaint and the Plaintiff's briefing focus on two specific allegations in the Dewitt Complaint which PRM contends invoked its duty to defend. Those paragraphs are:[3]

> 19. Performance of Dewitt's work was far more time-consuming and costly than Dewitt reasonably could have anticipated at the time of contracting as a result of errors and omissions in the City's plans and specifications and the City's engineer's gross under-estimate of quantities of various items, Dewitt would be required to furnish.
>
> . . .

---

[2] This apparent agreement is solely limited to Count I, the breach of contract claim. PRM, also claims it is entitled to coverage under a theory of estoppel, however this theory is principally based on letters from OneBeacon, rather than the terms of the insurance policies.

[3] All references to the "City" within the Dewitt Complaint are referring to the City of Winter Garden.

> 24. Dewitt would have timely completed its Work but for the City's misleading information about the utility locations, errors and omissions in the City's plans and specifications, and other hindrances attributable to the City, the FDOT Contractor, and/or other third parties.

(Doc. 13-1 ¶¶ 19, 24). These allegations, however, must also be considered along with the rest of the Dewitt Complaint. The remainder of the Dewitt Complaint sets forth a simple construction dispute.[4] The FDOT Project was alleged to have been more complex than originally thought, partly due to information from and actions by Winter Garden. (*See* Doc. 13-1 ¶¶ 12-25). Dewitt alleged it could not finish on schedule and that the materials and labor costs increased due to forces outside of its control, therefore, it claimed that it was owed additional funds under the terms of the Construction Contract. (*Id.* at ¶¶ 26-27). All of Dewitt's claims in Count I relied on the Construction Contract as the basis for Winter Garden owing it additional money, Dewitt did not rely on negligence.

### iii. Whether Winter Garden's Liability was Alleged to Arise from a Wrongful Act and Whether the Failure to Pay was Excluded as an Intentional Breach of Contract

Under the unambiguous terms of the PRM Policy, PRM had the obligation to defend actions where liability was asserted to arise "by reason of a WRONGFUL ACT . . . ." (Doc. 2-2 at 68). The Dewitt Complaint makes clear that the asserted basis for money damages was Winter Garden not paying what it allegedly owed under the terms of the Construction Contract. As such, there was no allegation of any purported wrongful acts by Winter Garden officials that gave rise to the Dewitt Action—the Construction Contract was the reason Winter Garden was obligated to pay

---

[4] Count II of the Dewitt Complaint, for violations of Florida's Public Records Act, is plainly not covered under the policies. That count sought relief in the form of production of records (Doc. 13-1 at 11) and the PRM Policy only covered claims for damages (Doc. 2-2 at 68). Further, PRM does not argue in its Response that Count II of the Dewitt Complaint is covered under the policies. Accordingly, the Court will devote no further analysis to whether PRM had a duty to defend based on Count II of the Dewitt Action.

Dewitt. *See Am. Cas. Co. of Reading, Pa. v. Hotel & Rest. Employees & Bartenders Int'l Union Welfare Fund*, 942 P.2d 172, 175 (Nev. Sup. Ct. 1997) (ruling that failure to pay certain funds pursuant to a merger agreement was not a loss arising from wrongful act); *see also Waste Corp. of America, Inc. v. Genesis Insurance Co.*, 382 F. Supp. 2d 1349, 1358 (S.D. Fla. 2005) aff'd, 209 F. App'x 899 (11th Cir. 2006) (analyzing *Am. Cas. Co. of Reading, Pa.* and stating "[t]he court held the acts of failing to fund were not covered by the policy, stating that one could not transform a default arising out of a contractual liability into an insured event").

While it is clear that the alleged breach did not arise due to a wrongful act, the PRM Policy further stated that intentional breaches of contract were specifically excluded from coverage. (Doc. 2-2 at 70 (excluding "Loss arising out of an intentional breach of contract.")). The allegations in the Dewitt Complaint asserted that Winter Garden refused pay Dewitt the money owed. (Doc. 13-1 ¶¶ 25-27). As such, even if it were unclear whether the Dewitt Complaint may be construed as arising from a covered "wrongful act," the more specific exclusion of intentional breach would preclude coverage. *See Baylor Heating & Air Conditioning, Inc. v. Federated Mut. Ins. Co.*, 987 F.2d 415, 419 (7th Cir. 1993) (refusal to comply with contractual obligations is intentional, not negligent, even if refusing party did not "set out" to avoid its contractual obligations or if its decision was based on incorrect legal advice); *cf. Acordia Ne., Inc. v. Thesseus Int'l Asset Fund NV*, 01 CIV. 5398 (RLC), 2003 WL 22057003 (S.D.N.Y. Sept. 4, 2003) ("It would be self-defeating for the insurers who draft these contracts to limit coverage for intentional acts, while at the same time covering intentional errors and omissions."). Under either of the provisions above, PRM was not obligated to defend Winter Garden, accordingly, Count I must be dismissed with prejudice.

### b. Whether Estoppel can Create Insurance Coverage in this Case

The Plaintiff asserted a claim for equitable estoppel in Count II as a basis for insurance coverage. Plaintiff attempts to argue that Count II should be evaluated under general equitable

estoppel principles. (Doc. 20 at 13-15). However, the Florida Supreme Court has set forth limited circumstances wherein a theory of estoppel may be used to create insurance coverage. *Crown Life Ins. Co. v. McBride*, 517 So. 2d 660, 662 (Fla. 1987). Thus, the rule set forth in *Crown Life Insurance Co.* applies in this case because Plaintiff is attempting to secure insurance coverage by estoppel.

In *Crown Life Insurance Co.*, the Florida Supreme Court held that "the form of equitable estoppel known as promissory estoppel may be utilized to create insurance coverage where to refuse to do so would sanction fraud or other injustice." *Id.* However, this is a narrow exception to the general rule that estoppel does not create insurance coverage. *Id.* ("The general rule in applying equitable estoppel to insurance contracts provides that estoppel may be used defensively to prevent a forfeiture of insurance coverage, but not affirmatively to create or extend coverage."). *Crown Life Insurance Co.* described the circumstances remediable by estoppel, stating: "Such injustice may be found where the promisor reasonably should have expected that his affirmative representations would induce the promisee into action or forbearance substantial in nature, and where the promisee shows that such reliance thereon was to his detriment." *Id.* At base, promissory estoppel in this context prevents the commission of fraud by an insurer.

PRM bases its claim for estoppel on the interactions between it and OneBeacon following the initiation of the Dewitt Action. After PRM notified OneBeacon of the Dewitt Action, OneBeacon sent a letter to PRM denying that the Dewitt Action was covered ("Denial Letter"). (*See* Doc. 2 ¶ 28; Doc. 2-3). Later, OneBeacon supplemented the Denial Letter and reasserted the denial of coverage but, based on PRM's request, proceeded under a reservation of rights to determine if the Dewitt Action was covered ("Reservation Letter"). (Doc. 2-4). PRM essentially bases its estoppel argument on the Denial and Reservation Letters. (Doc. 2 ¶¶ 28-38). Notably,

however, the Reservation Letter expressly stated that OneBeacon did not believe the Dewitt Action implicated the OneBeacon Treaty. Specifically, the letter stated:

> As requested, OneBeacon has revisited its coverage analysis for the [Dewitt Action]. . . . One Beacon continues to struggle to find any potential coverage for the Dewitt Action under the [OneBeacon Treaty]. Nevertheless, as requested, OneBeacon will proceed under a full reservation of rights and will continue to monitor developments in the Dewitt Action to see if coverage is implicated at some point. **OneBeacon proceeds in this manner without conceding that there is at present any potential coverage under the Treaty** and without waiving any of its rights, including the right to deny coverage for the Dewitt Action in its entirety.

(Doc. 2-4 at 1 (emphasis added)). The Reservation Letter goes on to specifically address PRM's view on its duty to defend under the PRM Policy, specifically analyzing paragraphs nineteen and twenty-four of the Dewitt Complaint.

PRM claims that OneBeacon instructed it that PRM had a duty to defend Winter Garden. PRM points to language from the third page of the Reservation Letter stating that "under the [OneBeacon] Treaty, PRM has the duty to defend claims." (*Id.* at 3). Conspicuously, OneBeacon did not say that PRM had a duty to defend *this* claim or *the* claim—rather it used the indefinite noun "claims." Reading the whole letter makes clear that OneBeacon was acknowledging PRM had a duty to defend claims that fairly fell within the scope of the PRM Policy. The letter also makes clear that OneBeacon understood PRM believed the Dewitt Action was covered, but OneBeacon repeatedly stated that it did not share this view. OneBeacon's analysis and express statements that the Dewitt Action was not covered under the PRM Policy preclude a finding that the purported promisor, OneBeacon, should have expected that the alleged affirmative representations, the statement that PRM had a duty to defend claims, would induce the purported promisee, PRM, into action or forbearance. *See Crown Life Ins. Co*, 517 So. 2d at 662.

Further, the PRM Policy plainly excluded intentional acts from coverage. The OneBeacon Treaty was predicated on the PRM Policy, therefore the agreement between PRM and OneBeacon

- 10 -

was based on the understanding that Winter Park's intentional acts would not be covered. As such, there is no injustice in enforcing the OneBeacon Treaty as bargained for by the parties. *See Burger King Corp. v. Lumbermens Mut. Cas. Co.*, 410 F. Supp. 2d 1249, 1259 (S.D. Fla. 2005) (analyzing *Crown Life Ins. Co.* and stating "because the policy for which [plaintiff] bargained and paid a premium clearly and unambiguously excludes intentional discrimination claims from its coverage provisions, the Court's refusal to apply promissory estoppel to create coverage where none existed is a just and equitable result"). Accordingly, Count II is also due to be dismissed with prejudice.

Therefore it is,

**ORDERED** that the Defendant, One Beacon's Motion to Dismiss or in the Alternative Motion for Summary Judgment (Doc. 13) is **GRANTED**. The case is dismissed **WITH PREJUDICE** and the clerk is directed to close the case.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on October 18, 2013.

_____
GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Party